UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| **ABBAS BAZZI,**<br><br>Plaintiff,<br><br>vs.<br><br>**M S INTERNATIONAL INC,**<br><br>Defendant. | **2:21-CV-11788-TGB**<br><br><br><br>**ORDER GRANTING MOTION TO DISMISS AND COMPEL ARBITRATION (ECF NO. 4)** |

The Plaintiff in this case, Abbas Bazzi, is hearing impaired and a resident of the state of Michigan. Beginning in 2015, Bazzi worked as a customer service representative for Defendant M S International Inc. ("MSI"), an out-of-state company, until he was suspended and eventually terminated in 2019, allegedly for raising his voice. Bazzi is now suing MSI for disparate treatment and retaliation in violation of MCL § 37.1101, *et seq*. Defendant MSI has filed a Motion to Dismiss and to Compel Arbitration. For the reasons that follow, the Motion to Dismiss and Compel Arbitration (ECF No. 4) is **GRANTED**.

## I.   BACKGROUND

Plaintiff alleges he is deaf in his left ear and is a qualified person with a disability under MCL §37.1210. Compl., ECF No. 4-2, PageID.46, ¶¶1 and 2. Plaintiff alleges he was employed by Defendant MSI, which is incorporated under the laws of Indiana and conducts business in Oakland County, Michigan. *Id*. at ¶4. Defendant is alleged to be a covered employer under MCL § 37.1210. *Id.* at ¶5. In Michigan, a covered employer is defined as any person who has 1 or more employees. Mich. Comp. Laws § 37.1201(b).

Plaintiff states that he began working for Defendant MSI as a customer service representative in March of 2015. *Id*. at PageID.47, ¶10. He claims that he received write-ups for speaking too loudly even though Defendant MSI was aware of his partial deafness. *Id*. at ¶12. According to Plaintiff, MSI also denied him promotions and other positions due to his disability. *Id*. at ¶17. In June 2019, when Plaintiff complained to his supervisor that he was being accused of raising his voice, even though he is partially deaf, he was suspended and terminated thereafter. *Id*. at ¶18-19.

Prior to his hiring, Plaintiff was required to sign a number of documents. ECF No. 6, PageID.71. Plaintiff alleges that a document entitled "Applicant's Statement & Agreement" ("Agreement") was among those that he signed. *Id*; Agreement, ECF No. 4-3, PageID.53. As both parties acknowledge the applicability of the arbitration clause of this

2

Agreement, and because several of its provisions are at issue, the Agreement's arbitration clause is quoted here at length:

> I also acknowledge that the Company promotes a voluntary system of alternative dispute resolution which involves binding arbitration to resolve disputes which may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I voluntarily agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other state or federal laws or regulations) which would otherwise require or allow resolution to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department Claims) shall be submitted and determined exclusively by binding arbitration under Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 et seq., including section 1283.05 and all of the other Act's other

mandatory and permissive rights to discovery). However in addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court. To the extent applicable in civic [sic] actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civic [sic] Procedure Section 631.8. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded and the arbitrator may not invoke any basis (including but not limited to notions of "just cause") other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. Likewise, all communications during or in connection with the arbitration proceedings are privileged in accordance with Cal. Civil Code Section 47(b). As reasonably required to allow full use and benefit of this agreement's modifications of the Act's procedures, the arbitrator shall extend the times set by the Act for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion and at either party's written request within 10 days after issuance of the award, shall be subject to affirmation, reversal, or modification, following review of the record and arguments of the parties by a second arbitrator who shall, as far as practicable, proceed according to the law and procedures applicable to appellate review by the California court of Appeal of a civil judgment following court trial. Should any term or provision or portion thereof be declared void or unenforceable, it shall be severed

4

and the remainder of this agreement shall be enforceable. I UNDERSTAND BY VOLUNTARILY AGRREEMENT [sic] TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP RIGHTS TO TRIAL BY JURY.

*Id.* Elsewhere, the Agreement also provides:

If hired, I agree as follows: My employment and compensation is terminable at-will, is for no definite period, and my employment and compensation may be terminated by the Company (employer) at any time and for any reason whatsoever, with or without good cause and the option of either the Company or myself. No implied, oral, or written agreements contrary to the express language of this agreement are valid unless they are in writing and signed by the President of the Company (or majority owner or owners if Company is not a corporation). No supervisor or representative of the Company, other than the President of the company (or majority owner or owners if Company is not a corporation), has any authority to make any agreements contrary to the foregoing. This agreement is the entirety [sic] agreement between the Company and the employee regarding the rights of the Company or employee to terminate employment with or without good cause, and this agreement takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and the Company.

*Id.* Defendant MSI has filed a Motion to Dismiss and Compel Arbitration under the terms of the Agreement. ECF No. 4. The motion has been fully briefed, and the Court indicated that it would resolve the motion without oral argument.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d

at 893 (quoting *Iqbal*, 556 U.S. at 678–679).

## III.   ANALYSIS

Defendant MSI contends in its Motion to Dismiss and Compel Arbitration that the Agreement is enforceable and requires Plaintiff to submit his claims to arbitration. Plaintiff argues that the agreement is unenforceable for three reasons, all based on state law: (1) the agreement is ambiguous; (2) the agreement is illusory; and (3) the choice-of-law provision is unenforceable.[1]

### A. Enforceability of the agreement

The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration and places arbitration on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (citing 9 U.S.C. § 2). While the FAA establishes a liberal policy that favors arbitration agreements, arbitration is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)(citation and internal marks omitted).

---

[1]Plaintiff appears to characterize the various California-specific provisions of the Agreement as "choice-of-law" provisions. However, the Court concludes that the Agreement does not contain a choice-of-law provision governing the substantive law to be applied in any arbitration. The agreement provides that the substantive law applied will be "based *solely* on the law governing the claims and defenses pleaded." Agreement, ECF No. 4-3, PageID.53 (emphasis added). Because Plaintiff invokes Michigan statutory discrimination law, his claim will be resolved under the substantive law of Michigan.

There is a "strong federal policy in favor of arbitrability," and "any doubts as to arbitrability" should be resolved "in favor of arbitration." *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 675, 680 (6th Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Prior to compelling an unwilling party to arbitrate, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). And, "[b]ecause arbitration agreements are fundamentally contracts," courts "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013). Therefore, the Court will apply Michigan law to any general state law principles that govern the formation of contracts.

A valid and enforceable contract, in the State of Michigan, must satisfy the following requirements: (1) the parties are competent to contract; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Hess v. Cannon Twp.*, 265 Mich. App. 582, 592, (2005) (quoting *Thomas v. Leja,* 187 Mich. App. 418, 422 (1991)).

### 1. Whether Plaintiff was competent to contract

Plaintiff appears to argue that because he did not know what the word "arbitration" meant; he was not competent to contract. Pl's. Resp., ECF No. 6, PageID.80. The Sixth Circuit has explained that an employee's ignorance of an arbitration agreement's terms will not prevent its application. *Haskins v. Prudential Ins. Co. of America*, 230 F. 3d 231, 239 (6th Cir. 2000). One who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful acts. *Id*. (citing to 17 Am. Jur. 2d Contracts § 224 (1991)). On this basis, other courts in the Sixth Circuit have enforced arbitration agreements despite objections by the parties that they did not understand what arbitration meant. *See, e.g.*, *E.E.O.C. v. Frank's Nursery & Crafts, Inc*., 966 F. Supp. 500, 504 (E.D. Mich. 1997), (rev'd on other grounds, 177 F.3d 448 (6th Cir. 1999)); *Hayward v. Trinity Christian Ctr. of Santa Ana*, No. 3:14-CV-2282, 2015 WL 1924552, at *5 (M.D. Tenn. Apr. 28, 2015); *Jones v. U-Haul Co. of Massachusetts & Ohio Inc*., 16 F. Supp. 3d 922, 933-34 (S.D. Ohio 2014). Plaintiff does not plead facts suggesting any such fraud, misrepresentation, or other wrongful acts surrounding the execution of the Agreement. And here, the Agreement makes clear, in capital letters, that, by signing, both Plaintiff and MSI were giving up their right to a jury trial. Agreement, ECF No. 4-3, PageID.53. Additionally, the Agreement clearly states, also in capital letters, that the recipient should

not sign the agreement without reading it, and, immediately above the signature line, invites the recipient to "please ask a Company representative before signing" if the recipient has any questions about the Agreement. *Id.* Under all these circumstances, Plaintiff's contention that he may not have understood the meaning of the word "arbitration" is not sufficient to render the Agreement unenforceable.

### 2. Whether the Agreement is illusory or unenforceable for lack of mutual obligation

Plaintiff argues that the Agreement is illusory because it permits Defendant MSI to unilaterally alter the terms of the Agreement. An illusory contract is an agreement that is rendered unenforceable because one party gives as consideration a promise that is so insubstantial as to impose no obligation at all. *Cincinnati Ins. Co. v. Hall*, 2013 WL 3107640, *5 (Ct. App. Mich. 2013). An "employment agreement [containing] an arbitration provision that may be unilaterally changed by the employer at any time" is "unenforceable for lack of mutuality of obligation." *Smith v. Chrysler Fin. Corp.*, 101 F. Supp. 2d 534, 538 (E.D. Mich. 2000)

Plaintiff as argues that the following provision authorizes MSI to modify the agreement unilaterally:

> If hired, I agree as follows: My employment and compensation is terminable at-will, is for no definite period, and my employment and compensation may be terminated by the Company (employer) at any time and for any reason whatsoever, with or without good cause and the option of either the Company or myself. **No implied, oral, or written**

**agreements contrary to the express language of this agreement are valid unless they are in writing and signed by the President of the Company (or majority owner or owners if Company is not a corporation). No supervisor or representative of the Company, other than the President of the company (or majority owner or owners if Company is not a corporation), has any authority to make any agreements contrary to the foregoing.**

ECF No. 4-3, PageID.53 (emphasis added).

Here, the challenged provision does not provide MSI with the unilateral right to modify the agreement. Instead, this provision imposes an additional requirement that applies to any *subsequent* modifications that the parties may mutually agree upon. This language does not authorize MSI's president to unilaterally amend the contract; it merely provides that later implied oral or written "*agreements*" will only be valid if signed by MSI's president—it applies only to subsequent "agreements" between the parties, not any subsequent modification. Because the provision merely imposes additional requirements on mutually agreed modifications, it does not provide MSI the unilateral right to modify the contract. *See, e.g.*, *Hillgen-Ruiz v. TLC Casino Enterprises*, Inc., 2014 WL 5341676, *7 (D. Nev. 2014)(interpreting a substantially identical provision and explaining that contract was not alterable at will by the employer).

As in *Hilgen-Ruiz,* so here Plaintiff's argument that the Agreement is illusory must fail. This provision imposes an additional requirement on any subsequent agreed-upon modifications between the parties, but does not to allow modification without the Plaintiff's agreement. The Agreement is not illusory.

### 3. Whether the Agreement is ambiguous

Plaintiff alleges that the Agreement is ambiguous because the arbitration language is susceptible to two or more interpretations. ECF No. 6, PageID.78. Plaintiff contends that ambiguous language includes the Agreement's provision that a claim "shall be submitted and determined exclusively by binding arbitration under the FAA, in conformity with the procedures of the California Arbitration Act". *Id*. at PageID.80. In addition, Plaintiff claims references in the Agreement to "a retired California Superior Court Judge" and specific references to "California's Fair Employment and Housing Act" further render the agreement ambiguous. *Id.*

A court's primary obligation when interpreting a contract is to determine the intent of the parties. *Bodnar v. St. John Providence, Inc*., 327 Mich. App. 203, 220 (2019). The parties' intent is discerned from the contractual language as a whole according to "its plain and ordinary meaning. *Id*. (citing *Radenbaugh v. Farm Bureau Gen. Ins. Co. of Mich*., 240 Mich. App. 134, 138 (2000)). In Michigan, a contract is ambiguous "only if its language is reasonably susceptible to more than one

interpretation." *Cole v. Ladbroke*, 241 Mich. App. 1, 13 (2001). Accordingly, if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467 (2003). Contracts must be "construed so to give effect to every word or phrase as far as practicable." *Id.* (internal marks and citation omitted). An ambiguity must be patent; that is, apparent on its face. *Schanchner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996). If a court determines that a contract provision is ambiguous, then it "may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Id.*

In *Hayward v. Trinity Christian Center of Santa Ana,* the district court for the Middle District of Tennessee (Trauger, J.) declared certain provisions in an arbitration agreement unenforceable that were substantively similar to the terms of the Agreement in this case. Because the provision called for arbitration under the FAA and "under the jurisdiction of the County of Orange in the state of California, also in conformity with the procedures of the California Arbitration Act . . ." the *Hayward* court found that these terms were not sufficiently definite nor certain enough to clearly set forth the obligations of the parties, even though the overall agreement to arbitrate was found to be enforceable. 2015 WL 1924552, *4 (M.D. Tenn. 2015). The *Hayward* court held that

13

the enforceable provision of the Agreement stated, "I [Hayward] agree and acknowledge that the Company and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context." *Id*. at *3. The confusing and ambiguous language of the agreement included the following:

> Both the Company and I agree that any claim, dispute, and/or controversy that either I may have against the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) or the Company may have against me, arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act under the jurisdiction of the County of Orange in the state of California, also in conformity with the procedures of the California Arbitration Act (Cal.Code. Civ. Proc. Sec. 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery).

*Id*. at *4. The *Hayward* court could not discern, from the plain language, precisely what the obligations of the parties were. *Id*. In addition, the arbitration agreement's California-specific provisions (including a right to file and pursue proceedings in California) were not sufficiently definite. Therefore, the court held that, although arbitration would be ordered, those California-specific terms would be severed from the agreement. *Id*. at *4-5.

As in *Hayward*, which dealt with a very similar arbitration agreement, this Court concludes that the California-specific terms of the Agreement create ambiguity, and are therefore unenforceable. Plaintiff, a Michigan resident, appears to have worked for MSI only in Michigan, and does not seek to exercise any rights under California law. It appears that this Agreement may be a form contract that MSI gives to all employees, not merely those in California, where MSI appears to be headquartered. *See* Business Records, ECF No. 6-6, PageID.105. For several reasons, the California-specific provisions create ambiguity as to the parties' obligations to one another.

First, just as the agreement did in *Hayward* that the court found problematic, the Agreement here references "certain remedies that the employee retains under California law," *Hayward*, 2015 WL 1924552 at *4. These provisions, such as "the ability to file [non-arbitration] claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department Claims," have no applicability to Plaintiff Bazzi's employment in Michigan whatsoever. Agreement, ECF No. 4-3, PageID.53. Indeed, much of the language in the Agreement appears identical to that of the *Hayward* agreement, such as the requirement that the arbitrator be a retired California Superior Court Judge, the references to the rules of pleading and evidence applied in California courts, and several other provisions.

*See* Hayward Agreement, Document 7-1, PageID.21, *Hayward v. Trinity Christian Center*, 14-cv-02282 (M.D. Tenn. Dec. 16, 2014).

Second, immediately after explaining that the arbitration's procedures will be primarily governed by California law, such as the rules of pleadings, evidence, and discovery applicable in California courts, the Agreement states that "[r]esolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded." Agreement, ECF No. 4-3, PageID.53. The claim alleged in this suit is a violation of Michigan's Persons with Disabilities Civil Rights Act and, as MSI notes, "Michigan law will apply" to the resolution of that claim. Def's. Repl., ECF No. 7, PageID.116. However, nothing in the above-quoted provision of the Agreement limits the "law governing the claims and defenses pleaded" to *substantive* law alone. It could be read to require that Michigan procedural law be applied as well as Michigan's substantive law, because the clause provides that "the resolution of the dispute shall be based ***solely*** on the law governing the claims and defenses pleaded." Agreement, ECF No. 4-3, PageID.53. The parties seem to agree that it means resolution of Plaintiff Bazzi's PWDCRA claim "shall be based solely upon [Michigan law]—" but the language of the Agreement is also open to the interpretation that the resolution of the dispute, including the procedures to be followed, must be based on Michigan law. And, even if it is read to mean that Michigan substantive law should be applied to the claims, while California procedural law applies to the rules of

procedure and evidence, what should happen if, for example, the pleading, evidentiary, or discovery laws of Michigan conflicted with those of California?

Third, the Agreement also provides that "[a]s reasonably required to allow full use and benefit of this agreement's modifications of the Act's procedures, the arbitrator shall extend the times set by the Act for the giving of notices and setting of hearings." ECF No. 4-3, PageID.53. The problem with this provision is that it is unclear whether "the Act" refers to the Federal Arbitration Act, the California Arbitration Act, or some other law.

Fourth, somewhat critically, the Agreement fails to specify what Plaintiff must do to in order to exercise his right to arbitration, including whether he is required to initiate his arbitration in the state of California, or how he may initiate arbitration proceedings in general. Finally, despite the presence of several provisions that suggest the need to resolve this matter in California—such as the requirement that any arbitrator be a retired California Superior Court judge—the agreement is silent as to where arbitration must take place.[2]

---

[2] If the agreement unambiguously did provide that arbitration were required to take place in California, Section 4 of the Federal Arbitration Act would limit this Court's ability to enforce the provision. The Sixth Circuit has held that the FAA under Section 4 imposes the restriction that, where the parties have agreed to arbitrate in a particular forum,

The inclusion of these California-specific procedural provisions and other references to California law, coupled with the lack of clarity as to where arbitration must take place, creates ambiguity as to the procedures that would apply to arbitration in this case and where such arbitration must take place.

However, as in *Hayward*, despite this ambiguity in certain procedural clauses of the Agreement, the Court finds that the Agreement represents a clear and binding contract to arbitrate the present dispute. *See Hayward*, 2015 WL 1924552, at *5. The Agreement clearly states that both MSI and the employee "voluntary agree that any claim, dispute, and/or controversy . . . arising from related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or association with the Company . . . shall be submitted and determined exclusively by binding arbitration[.]" Agreement, ECF No. 4-3, PageID.53. Though that provision includes reference to federal and California law as examples of what sort of claims must be submitted to arbitration, those examples are not identified as exhaustive or exclusive, and the clause represents a clear agreement to arbitrate disputes. The Agreement also includes, in all capital letters, the following provision: "I UNDERSTAND BY VOLUNTARILY AGRREEMENT [sic]

---

only a district court in that forum has jurisdiction to compel arbitration. *Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997).

TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP RIGHTS TO TRIAL BY JURY." *Id.* This evinces a clear intent to arbitrate disputes. Moreover, as discussed in some detail above, the Agreement also includes an unambiguous provision identifying the substantive law (and, as discussed above, possibly the procedural law as well) that must be applied in any arbitration: "Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded and the arbitrator may not invoke any basis (including but not limited to notions of "just cause") other than such controlling law." *Id.*

Though the California-specific provisions of the Agreement are ambiguous, the doctrine of severability instructs a court to remove unenforceable terms within an agreement unless the offending provision taints the entire agreement. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003). Here, the potentially ambiguous procedural provisions may be struck. First, the Agreement contains a severability clause, which provides that if "any term or provision, or portion thereof," is declared unenforceable, "it shall be severed and the remainder of [the Agreement] shall be enforceable." Agreement, ECF No. 4-3, PageID.53. As the Sixth Circuit has explained, "when the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement." *Morrison*, 317 F.3d at 675. Second, when analyzing

arbitration agreements, the Supreme Court has instructed that courts should "resolve any doubts as to arbitrability in favor of arbitration." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Finally, any ambiguity created by the California-specific procedural clauses concerns only the procedures that are to be applied in an arbitration proceeding, and do not taint the remainder of the Agreement—which still represents a clear intention to arbitrate all disputes arising in the employment context. Consequently, the California-specific procedural provisions will be severed, leaving the remainder of the agreement intact. With those provisions removed (as denoted by ellipses), the Agreement reads as follows:

> I also acknowledge that the Company promotes a voluntary system of alternative dispute resolution which involves binding arbitration to resolve disputes which may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I voluntarily agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on . . . Title VII of the Civil Rights Act of 1964, as amended, as well as all other state or federal laws or regulations) which would otherwise require or allow resolution to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking

employment with, employment by, or other association with the Company, whether based on tort, contract, statutory or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board . . . ) shall be submitted and determined exclusively by binding arbitration under Federal Arbitration Act . . . . Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded and the arbitrator may not invoke any basis (including but not limited to notions of "just cause") other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator which immunity supplements any other existing immunity. . . . Awards shall include the arbitrator's written reasoned opinion and at either party's written request within 10 days after issuance of the award, shall be subject to affirmation, reversal, or modification, following review of the record and arguments of the parties by a second arbitrator . . . . Should any term or provision or portion thereof be declared void or unenforceable, it shall be severed and the remainder of this agreement shall be enforceable. I UNDERSTAND BY VOLUNTARILY AGRREEMENT [sic] TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP RIGHTS TO TRIAL BY JURY.

In this Agreement, Plaintiff and Defendant accepted  a binding obligation to arbitrate, which will be enforced. The California provisions in that Agreement, however, create ambiguity as to the procedures to be applied and the location where arbitration must be conducted. Those provisions will therefore be stricken from the Agreement as

unenforceable.  The remaining terms of the Agreement nevertheless bind the parties to pursue arbitration.

## CONCLUSION

Accordingly, Defendant's Motion to Dismiss and Compel Arbitration will be **GRANTED**. The case will not be dismissed, however, until the following Order has been complied with.

In order to effectuate this Order, Counsel for Plaintiff and Defendant are **ORDERED** to meet and confer without delay to discuss and determine a mutually agreeable arbitration framework and to select a neutral arbitrator. Within twenty-one (21) days of the date of this Order, or no later than April 11, 2022, the parties shall file a joint notice and proposed stipulated order identifying their proposed arbitrator, arbitration date, and any other relevant information pertaining to their framework for arbitration.  Provided that this arbitration plan meets the approval of the Court, this case will then be dismissed and arbitration will be ordered in conformity with the parties' submitted plan.

**IT IS SO ORDERED.**

DATED: March 21, 2022

BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE